HACK, RECEIVER *v.* JOBES ET AL.

[No. 26,936. Filed November 24, 1937. Rehearing denied December 17, 1937.]

*Joseph Collier* and *Chalmer Schlosser*, for appellant.

*Carl E. Wood, Jones, Hammond, Buschmann & Gardner, William H. Krieg, Paul J. De Vault,* and *John A. Alexander,* for appellees.

TREANOR, C. J.—The Marion Circuit Court, in an action by State of Indiana, on the relation of its Bank Commissioner against the Washington Bank and Trust Company, adjudged the bank insolvent and not competent to continue business, and appointed a receiver to liquidate the assets and finally adjust the affairs thereof. Appellant Oren S. Hack is the qualified receiver of the bank.

By leave of court appellee Norman E. Jobes filed an intervening petition against the receiver of the bank and therein alleged in substance that the bank was organized for and engaged in business, as a bank and trust company, pursuant to the laws of Indiana relative to organization of loan and trust and safe deposit companies; that the bank had invested part of its assets in certain first mortgage securities, and had issued certain mortgage certificates designated as No Series, against said mortgage securities, and which mortgage securities it proposed to segregate and set aside and hold as trustee to secure payment of said No Series mortgage certificates. It is alleged that the bank did issue such mortgage certificates, and that petitioner and others purchased same; and that the petitioner prosecutes this proceeding in his own behalf and in behalf of all holders of said certificates, to apply said mortgage securities to pay said mortgage certificates.

Appellant answered this intervening petition by general denial and by special paragraphs, and appellee Jobes replied in general denial to second and third paragraphs of the answer.

The substantial relief sought by intervenor Norman E. Jobes was the establishment of a trust, in the aforesaid mortgage securities, for the benefit of the holders

of the First Mortgage Real Estate Certificates, No Series.

The court below found the issues of fact against appellant, that appellee Jobes and all holders of No Series mortgage certificates held a lien on and were entitled to priority of payment from the mortgage securities in question; and directed appellant as receiver to liquidate said securities and apply the fund accruing therefrom to payment of the No Series mortgage certificates.

The court entered judgment against appellant and in favor of appellee Jobes, that appellee Jobes and all No Series mortgage certificate holders held a lien against and were entitled to priority of payment, over all other creditors of the bank, from the fund accruing in liquidation of the mortgage securities in question; and ordered appellant as receiver of the bank to liquidate the mortgage securities, and, from the fund accruing therefrom to first pay in full all No series mortgage certificate holders before payment of any part of the fund to general creditors of the bank; and, also, adjudged the costs of the proceedings against appellant as receiver to be paid from the fund.

The error relied upon for reversal is the decision of the trial court in overruling the appellant's motion for a new trial. The causes specified are:

1. That the decision of the court is not sustained by sufficient evidence.

2. That the decision of the court is contrary to law.

3. That the damages assessed by the court are excessive.

On appeal appellant rests his case upon the single proposition that the Washington Bank and Trust Company was without legal power to create a trust out of its own assets for the benefit of the mortgage certificate holders.

The following facts are not controverted:

1. The notes and mortgages which were set aside to secure payment of mortgage certificates were set apart from the assets of the bank, and were so maintained during operation of the bank. They were sometimes kept in an envelope and at other times segregated with a rubber band or clip with pencil notation on slip of paper attached thereto, indicating the series of certificates they secured.

2. The bank from its incorporation to closing conducted a general banking and trust business. And from time to time issued mortgage certificates and sold them to the public.

3. On and after May, 1927, the bank issued and sold mortgage certificates and they were identical in form except as to amount, date and number. The bank received the purchase price in sale of such certificates.

4. Appellee has not been repaid the amount he paid for the certificates purchased by him; and other certificates of the same issue are unpaid, and the aggregate amount of the unpaid certificates, including those held by appellee, is $126,300.00.

The holders of said certificates exceed 100 in number and appellee prosecutes the proceeding in his own behalf and in behalf of all such certificate holders as a class.

5. The bank set apart from its assets, mortgage notes of principal aggregate face value in excess of the mortgage certificates until October, 1930, for the No Series certificates issued against same. The mortgage notes were held by the bank when it closed and were by it segregated from its other assets.

6. As the bank sold the certificates it transferred certain of its mortgage notes to secure same, and entered on its records "transferred to secure First Mortgage Certificates, No Series." It also issued other mort-

gage certificates, and the record also showed the amount collected on such notes which was set aside to pay the interest coupons. The bank retained possession of the mortgages and notes set aside to secure the certificates, and when the bank collected on said mortgage securities, the fund was deposited in the general fund, but credited to holders of the certificates.

7. In some instances the bank withdrew the mortgage securities and substituted other mortgage securities in lieu thereof, and when substitutions were so made entries were made on the books showing the condition. At time of appointment of the receiver the books of the bank showed the mortgage securities in question were set aside to pay the No Series Mortgage Certificates; and Downey, former receiver, came into possession of the mortgage securities and liquidated part of same and held the fund separate and apart from other assets of the bank, and the appellant has also kept the securities and funds separate and apart from other assets of the bank.

8. Prior to October, 1930, certain mortgage notes were transferred to secure No Series Mortgage Certificates, and at the same time certain mortgage notes were substituted. On the same date, the bank pledged the mortgage notes to secure a $50,000 loan; but the former receiver repaid the loan and recaptured the mortgage notes. On intervention of First National Bank of Batesville, the court ordered the then receiver to hold the mortgage notes for the benefit of No Series Mortgage Certificates, and that order has not been vacated.

9. Other securities of the bank of face value of $55,841.15 also with the No Series Mortgages, were pledged to secure the $50,000 loan, and the loan was paid from general assets of the bank.

10. The material provisions of the No Series Mortgage Certificates are as follows:

"FIRST MORTGAGE
REAL ESTATE CERTIFICATE

WASHINGTON BANK AND TRUST COMPANY

Indianapolis, Indiana

FIVE—years after May 1st, 1927, the date of this instrument, promises to pay to bearer the sum of

............................................DOLLARS

with interest thereon from the date hereof at the rate of 5½% per cent per annum, payable semi-annually, as evidenced by and upon presentation and surrender of the annexed interest coupons as they severally mature, said principal and interest being payable, however, only on a pro-rata basis out of the funds actually paid to and collected by WASHINGTON BANK AND TRUST COMPANY, on account of certain real estate first mortgages and/or the equivalent thereof subject only to current taxes and assessments for municipal improvements, and/or obligations of the United States of America and/or any political subdivision thereof, and/or cash on hand and in banks, which items are hereafter referred to as collaterals, in the principal amount in face value of not less than the principal amount of outstanding certificates likewise secured which collaterals are and shall continue to be set apart from the other assets of the WASHINGTON BANK AND TRUST COMPANY for the benefit of the holders of this certificate and other outstanding certificates likewise secured.

"THE WASHINGTON BANK AND TRUST COMPANY shall have the right to renew or extend and to make substitutions for the collaterals originally deposited herein, to increase or decrease the amount of collaterals, to increase or decrease the amount of certificates outstanding from time to time, to call this or any other similar outstanding certificate at any time on written notice to the holder thereof at face value, plus accrued interest thereon to the date of call, to provide different interest rates on any such additional certificates so long as no certificates call for more than six per cent per annum payable semi-annually. To issue certificates with and subject to provisions set out in

any certificates for definite fixed periods before
which such certificates may be cashed on such no-
tice and on such conditions as are or shall be set
out therein, provided always that the principal
amount of certificates outstanding at any one time
shall not exceed the face value of the principal
amount of collaterals pledged hereunder to secure
the payment thereof.

WASHINGTON BANK AND TRUST COMPANY,
By Mark V. Rinehart,
President."

On the authority of *Gretzinger* v. *Arehart* (1936),
209 Ind. 547, 193 N. E. 715, and *Sindlinger* v. *Depart-
ment of Financial Institutions* (1936), 210 Ind. 83, 199
N. E. 715, and in harmony with *Hack, Receiver* v.
*Christina et al., ante* 68, 11 N. E. (2d) 152, decided by
this court at this term, we hold that the Washington Bank
and Trust Company possessed legal power to create a
trust out of its own assets by segregating mortgage se-
curities and holding them for the benefit of the holders of
the No Series Mortgage Certificates, which certificates
were issued against, and upon the security of, the segre-
gated mortgage securities and purchased by the holders,
or their assignors, the purchase price becoming a part of
the general assets of the Washington Bank and Trust
Company.\* The device used is substantially the same
as that used in *Hack, Receiver* v. *Christina.* In both
cases mortgage securities were separated from the gen-
eral assets of the bank under an agreement to keep
them segregated as an investment fund, the principal
and earnings of which are the sole sources of interest
on the mortgage certificates, and repayment of the
original investments of the owners of the mortgage cer-
tificates. Under the facts both of *Hack, Receiver* v.

---

\* The power of the Washington Bank and Trust Company to
create the trust relied upon in the instant case depends upon the
statutory provisions which were relied upon in *Hack, Receiver* v.
*Christina,* viz: Act 1893, ch. 161, §10, as amended by Acts 1921,
ch. 20, §3.

*Christina* and the instant case the general assets of the Washington Bank and Trust Company were augmented by an amount equal to the value of the securities which were separated from the general assets for the benefit of the mortgage certificate holders; consequently no inequitable advantage was given to these certificate holders as against general depositors. The intention and effect of the agreement and subsequent acts of the Washington Bank and Trust Company was to make the holders of the mortgage certificates the equitable owners of the investment fund.

We adopt, as applicable to the facts of this case and as determinative of the question of the legal power of the Washington Bank and Trust Company to create the trust for the benefit of the holders of First Mortgage Real Estate Certificates, No Series, the following from the opinion of *Hack, Receiver* v. *Christina* et al., *supra* (ante p. 89) :

"It is beyond question that the Washington Bank and Trust Company had the power to make loans upon the security of real estate mortgages; and it is equally clear that it could have converted these mortgage securities into cash by assignment or conveyance to investors. Furthermore, the Washington Bank and Trust Company had the power to take back by assignment all such mortgage securities under an agreement to hold them in trust as an investment fund. Consequently, it would seem that the Trust Company had the power to segregate from its general assets a part, or all, of its mortgage securities and sell first lien mortgage certificates to investors with an agreement that the mortgage securities would be held as an investment fund for the benefit of the holders of the first lien mortgage certificates. By this transaction the Washington Bank and Trust Company converted its mortgage securities into cash by selling all beneficial interest in the mortgage securities, although it retained the legal title to the mortgage

securities. The security of the general depositors of the Washington Bank and Trust Company could not have been lessened by the transaction since the general assets were not diminished thereby, and the general financial soundness of the Bank and Trust Company could not have been impaired."

We conclude that the Washington Bank and Trust Company possessed the legal power to create a trust for the benefit of the holders of First Mortgage Real Estate Certificates, No Series, by the method, which the facts, as found by the trial court disclose was used in the instant case.

In accordance with our reasoning and conclusion we hold that the Marion Circuit Court did not err in overruling appellant's motion for a new trial.

The judgment of the Marion Circuit Court is affirmed.